UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FILED
IN CLERKS OFFICE
US DISTRICT COURT E.D.N.Y.

★ AUG 08 2018 ★

BROOKLYN OFFICE

----------------------------------------X

JEFFREY MILLER,

                 Petitioner,

  - against -

HOWARD GRAHAM, Superintendent of Auburn
Correctional Facility

               Respondent.

----------------------------------------X

**MEMORANDUM & ORDER**

14-cv-5901 (KAM)

**MATSUMOTO, United States District Judge:**

On October 6, 2014, petitioner Jeffrey Miller
("petitioner") brought the above-captioned *pro se* petition for a
writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United
States District Court for the Eastern District of New York,
challenging his conviction of one count of murder in the second
degree and three counts of criminal possession of a weapon in
the fourth degree. (*See* ECF No. 1, Petition for Writ of Habeas
Corpus ("Pet."), filed 10/06/2014.) Petitioner filed several
amended and supplemental petitions, the latest of which was
filed on November 7, 2016. (*See* ECF No. 13, Supplemental
Petition for Writ of Habeas Corpus ("Second Supp. Pet."), filed
11/07/2016.) For the reasons set forth below, the petition is
denied.

# FACTS

## I.   **Background Facts**

Petitioner's conviction stems from the death of Denise Gibbs ("Gibbs"). Petitioner and Gibbs were dating and had been living together in Gibbs' apartment for about two months prior to her death. (ECF No. 6-1, State Ct. R. of October 16, 2007 Proceedings ("Gibbs-Fitts Testimony Tr."), filed 12/10/2014, at 61-62.)[1] At 4:26 PM on Sunday, May 14, 2006, petitioner called Gibbs' mother asking where her daughter was. (*Id.* at 65.) Gibbs' mother said she did not know, and petitioner said she must be with friends. (*Id.*) Gibbs' mother told petitioner that he was "messing up" because of his drug use. (*Id.* at 68.) Gibbs had told her mother about arguments Gibbs and petitioner had been having over his drug use. (*Id.*)

Minutes later, at 4:33 PM, petitioner called 911 and reported that he found his girlfriend bleeding under some blankets and that she appeared to be dead. (ECF No. 6-1, State Ct. R. of October 16, 2007 Proceedings at 6, 21; ECF No. 6-2, State Ct. R. of Direct Appeal, filed 12/10/2014, at 45.) Petitioner told the dispatcher he discovered the body after noticing a television was missing from Gibbs' apartment and thinking his stepson had taken it into the room where Gibbs'

---

[1] Citations to the transcripts of the state court proceedings refer to the internal paginations and not the page number assigned by the Electronic Case Filing ("ECF") system.

body was. (ECF No. 6-2, State Ct. R. of Direct Appeal at 45.)
At 4:37 PM on Sunday, May 14, 2006, Police Officer Julio
Hernandez ("Officer Hernandez") responded to petitioner's 911
call. (ECF No. 6-1, State Ct. R. of October 17, 2007
Proceedings ("Hernandez Testimony Tr."), filed 12/10/2014, at
78.) Officer Hernandez found Gibbs in a bedroom, lying on the
floor, face down, with the lower half of her body covered in
quilts. (*Id.* at 79-80.) Gibbs was "hog-tied," with her arms
and legs bound together behind her back with an electrical cord.
(*Id.* at 92-93.)

Petitioner was in the apartment when Officer Hernandez
arrived and, according to Officer Hernandez, petitioner appeared
to be a "little groggy," like he had "just woken up," but also
"very calm." (*Id.* at 80-81, 120.) The officer observed that
the apartment showed no signs of disarray or struggle. (*Id.* at
82.) Petitioner told Officer Hernandez that he arrived home the
day before (Saturday, May 13, 2006) at 11 AM, still drunk after
a night of drinking, and walked to his bedroom and fell asleep.
(*Id.* at 97-98, 119.) Petitioner stated that he did not wake up
until that afternoon (Sunday, May 14, 2006), at which point he
noticed a stereo or television was missing and went to look for
Gibbs, thinking something was wrong. (*Id.* at 97-98.)
Petitioner claimed he then looked into a bedroom where he found
Gibbs and subsequently called 911. (*Id.*)

3

Dr. Frede Frederic performed an autopsy on Gibbs and concluded that she died of asphyxia due to compression of her neck and/or occlusion of her airway. (ECF No. 6-1, State Ct. R. of October 16, 2007 Proceedings ("Frederic Testimony Tr."), filed 12/10/2014, at 34.) Dr. Frederic concluded that a knotted bandana placed deep inside Gibbs' mouth occluded Gibbs' airway, preventing any air from passing into her lungs. (*Id.*) From small abrasions on Gibbs' neck, Dr. Frederic concluded that her neck was compressed by either a hand or a forearm, but not a ligature. (*Id.*) Dr. Frederic estimated that the neck compression lasted "maybe less than 15 seconds," but it was possible it only lasted a second or two if the pressure was forceful enough to cause a "vasovagal reflex," which would stop the heart instantly. (*Id.* at 51-55.) There was no trauma to Gibbs' body other than to her neck, and her fingernails were well manicured and not broken. (*Id.* at 32, 59.) Dr. Frederic also concluded that Gibbs' arms and legs were bound after she was already dead. (*Id.* at 38.) Gibbs had been dead between 24 and 36 hours before her body was discovered by the police. (*Id.* at 35.)

Petitioner voluntarily accompanied the police officers to the 73rd Precinct where he was questioned by Officer Sean McTighe ("Officer McTighe"). (ECF No. 6-1, State Ct. R. of October 17, 2007 Proceedings ("McTighe Testimony Tr."), filed

12/10/2014, at 130-31, 139-40.) Petitioner was informed of his *Miranda* rights and waived his right to counsel, but refused to sign the *Miranda* form. (*Id.* at 139-40.)

Petitioner elaborated on his earlier story and explained that he and Gibbs had been play fighting the prior morning (Saturday), which included choking one another. (*Id.* at 141, 174-75.) Petitioner also said that he and Gibbs had been arguing recently due to his drug use, and that he left Gibbs' apartment on Saturday to sell CDs. (*Id.* at 141.) Petitioner claimed that he returned drunk to Gibbs' apartment at 2 AM and then woke up at 4 PM when someone knocked on his door to buy a CD, after which he found Gibbs' body and called 911. (*Id.* at 143-44.) Officer McTighe had petitioner take off his shirt and determined there were no marks indicating petitioner had been in a physical altercation. (*Id.* at 148.)

After the interview, petitioner was charged with petit larceny and placed in a holding cell. (*Id.* 150.) The arrest was based on petitioner's statement to police, made while at Gibbs' apartment, that he sold a cable box recently. (*Id.* at 149-50.) Police also found a cable bill found in Gibbs' apartment with petitioner's name on it. (*Id.* at 150.) Petitioner remained in a holding cell overnight. (*Id.* at 150-51.)

After Officer McTighe was informed early on Monday, May 15, 2006 of the autopsy results concluding that Gibbs died from asphyxiation, he interviewed petitioner again at 3:30 PM on May 15. (*Id.* at 151-52.) Petitioner again waived his *Miranda* rights, but this time he also signed the *Miranda* form. (*Id.* at 154-56.) During this interview, petitioner produced a handwritten statement. (*Id.* at 157.)

Petitioner's written statement stated that he returned to Gibbs' apartment around 10 AM on Saturday, May 13, after a night of smoking crack. (*Id.*) When Gibbs saw that petitioner was high, she got upset and started pushing petitioner, who pushed Gibbs back. (*Id.*) Eventually, they wound up in a bedroom where, according to petitioner's statement, Gibbs fell and stopped moving. (*Id.*) Petitioner then tied Gibbs up and put a scarf in her mouth so that when she woke up she would not be able to move or scream. (*Id.*) He then unhooked the stereo from Gibbs' apartment and sold it to buy crack, and he proceeded to smoke the crack in the apartment. (*Id.* at 157-58.) Petitioner then sold Gibbs' television and bought more crack, returning again to smoke it in the apartment. (*Id.* at 158.)

Petitioner then tried to sell his mp3 player for more crack, but decided that "enough was enough" and then started to cry about what happened "because [he] was so sorry because [Gibbs] didn't deserve this." (*Id.*) Petitioner wrote that he

decided to take his own life and searched the apartment for pills. (*Id.*) He found three different medications and took a handful of them before covering Gibbs and then sitting on the floor with his back against her while he waited for the pills to take effect.[2] (*Id.*) Petitioner wrote, "I felt terrible because I let crack destroy not only my life but hers as well." (*Id.*)

Petitioner wrote that, after the pills began to kick in, he became extremely drowsy. (*Id.*) He made his way to his bed and laid down "to let the pills finish [him] off." (*Id.*) He woke up around 4 PM on Sunday, May 14, to a neighbor knocking on his door. (*Id.* at 158-59.) Petitioner wrote that he then saw a missed call from Gibbs' mom, so he called her back and asked her where Gibbs was. (*Id.* at 159.) After hanging up, petitioner went to look at Gibbs one more time and to apologize to her. (*Id.*) At that point, he saw blood and decided to call 911. (*Id.*) Petitioner ended his statement by writing, "I find myself wishing I could take it all back. A piece of me died with her. I couldn't begin to explain how sorry I am. God please forgive me." (*Id.*)

---

[2] Officer McTighe went back to Gibbs' apartment and found bottles of all three drugs that petitioner claimed to take in his suicide attempt (Seroquel, Trazodone and Risperdal). (ECF No. 6-1, McTighe Testimony Tr. at 195-96.) Officer McTighe indicated that the pills had been removed from the bottles and that he believed petitioner took them, though he did not notice physical signs of overdose when he saw petitioner on May 14. (*Id.* at 195-96, 198-200, 207, 213-14.)

After providing this statement to police, petitioner
was placed under arrest for murder in the second degree. (*Id.*
at 160.)

## II.  Bench Trial, Verdict, and Sentencing

On October 11, 2007, petitioner appeared before Judge
Matthew D'Emic in the Supreme Court for the County of Kings,
Criminal Division, Part 4. (ECF No. 6-1, State Ct. R. of the
October 11, 2007 Proceedings, filed 12/10/2014, at 1-2.)
Petitioner's trial counsel, Peter Guadagnino, Esq., informed the
court that petitioner was waiving his right to a jury trial, and
petitioner signed a form to that effect. (*Id.* at 2-3, 4-5.)
The court confirmed that a *Huntley* hearing, as to the
admissibility of petitioner's written statement to police, would
be incorporated into the bench trial.[3] (*Id.* at 4-5.)

On the afternoon of October 16, 2007, petitioner's
bench trial commenced. (ECF No. 6-1, State Ct. R. of the
October 16, 2007 Proceedings, filed 12/10/2014, at 1-2.) At the
end of the prosecution's case on October 18, 2007, the court
brought up the *Huntley* issue as to whether petitioner's written
statement, made while in police custody, should be suppressed.
(ECF No. 6-1, State Ct. R. of the October 18, 2007 Proceedings,
filed 12/10/2014, at 215.) Trial counsel consulted with

---

[3] A *Huntley* hearing is a hearing pursuant to New York State law for the
purpose of reviewing whether a statement by a defendant was made
involuntarily. *See* 32A N.Y. Jur. 2d Criminal Law: Procedure § 1665.

petitioner and then told the court that he would not "argue against the introduction of those statements into evidence." (*Id.*) Trial counsel then requested that the charges be dismissed due to the prosecution's failure to make a *prima facie* case. (*Id.* at 232-33.) The court denied the request. (*Id.*)

The court submitted to itself charges of murder in the second degree, and the lesser included offenses of first and second-degree manslaughter, and criminally negligent homicide. (*Id.* at 216, 218, 233.) In summation, trial counsel admitted that petitioner caused the death of the victim, for which petitioner was sorry, and that the only issue for the court to decide was petitioner's "culpable state of mind[.]" (*Id.* at 233-34.) Trial counsel stressed that the testimony from the medical examiner indicating that one second of pressure could have killed Gibbs combined with no evidence of any struggle demonstrated a lack of intent to kill. (*Id.* at 237.) In addition, counsel stressed that petitioner tied Gibbs up and placed a bandana in her mouth as evidence that he did not even realize she was dead. (*Id.* at 238-39.)

On October 22, 2007, the trial judge found petitioner guilty of second degree murder and three counts of criminal possession of a weapon in the fourth degree. (ECF No. 6-1, State Ct. R. of the October 22, 2007 Proceedings, filed 12/10/2014, at 257.) The trial judge explained that, despite

the fact that Gibbs was bound only after her death, the "viciousness of all [Mr. Miller]'s acts leads to the unavoidable conclusion beyond a reasonable doubt that Mr. Miller intended to cause the death of Ms. Gibbs." (*Id.* at 258.)

Trial counsel requested October 30, 2007 as a sentencing date, which the trial judge said he would try to accommodate despite a worry of whether "it [was] enough time for probation." (*Id.* at 259.)  Sentencing was adjourned subsequently to November 28, 2007, at which point trial counsel requested an adjournment to mid-January 2008.  (ECF No. 6-2, State Ct. R. of Direct Appeal at 13.)  The trial judge set the sentencing for December 6, 2007 and, at the beginning of the sentencing hearing, trial counsel again requested an adjournment of sentencing.  (ECF No. 6-1, State Ct. R. of December 6, 2007 Proceedings, filed 12/10/2014, at 2-3.)  Trial counsel explained that he had expected a presentence investigation report from the Osborne Society, which psychiatrically evaluated petitioner for a few hours, but the report had not yet been submitted to trial counsel.  (*Id.*)  Counsel did not elaborate as to his efforts to obtain the report or its importance to sentencing.  The court denied the request.  (*Id.* at 3.)

Petitioner gave a statement to the court during which he described Gibbs' death as an "accident" and "tragedy," and stated that he had taken Gibbs in from a shelter because her

family did not care about her.  (*Id.* at 11-14.)  Petitioner also stated that he disagreed with his lawyer submitting a mental health analysis from Riker's Island instead of a different, unspecified evaluation.  (*Id.* at 12.)

The prosecution requested 25 years to life and trial counsel requested "the lower end of the sentencing guidelines range," noting petitioner's prior psychiatric history and his drug problem as mitigating factors.  (*Id.* at 10, 16.)  The court sentenced petitioner to concurrent terms of imprisonment of the maximum of twenty-five years to life on the murder count and one year each on the three criminal possession of a weapon counts. (*Id.* at 16-17.)

### III. Post-Conviction Proceedings

#### A.    Petitioner's First C.P.L. § 440.10 Motion

On January 26, 2009, petitioner moved *pro se* to vacate his conviction pursuant to Section 440.10 of the New York State Criminal Procedure Law ("C.P.L. § 440.10").  (ECF No. 6-3, State Ct. R. of First 440.10 Motion, filed 12/10/2014, at 2-26.)[4] Petitioner moved to vacate his judgment on ineffective assistance of counsel grounds.  Petitioner argued that trial counsel was ineffective because, *inter alia*, counsel failed: to pursue a viable suppression claim for petitioner's oral and

---

[4] Citations to all state court filings refer to the page numbering assigned by the ECF filing system at the top of each document.

written statements given to police while in custody; to provide expert testimony to counter the government's medical examiner; to establish the seriousness of petitioner's drug addiction and its effect on his ability to form the intent to kill; to procure an independent pre-sentencing report from a mental health organization that had spent hours interviewing petitioner; and to prepare for trial and mount a substantial defense. (*Id.* at 10-26.) Petitioner attached 22 exhibits, including letters he sent to trial counsel requesting an affidavit in response to the ineffective assistance of counsel claims. (*Id.* at 88-89, 91.)

The People opposed petitioner's motion in papers filed on March 31, 2009. (*Id.* at 92-94.) The People argued that all of petitioner's claims were procedurally barred because they could be "discerned from the record," which requires them to be heard on direct appeal. (*Id.* at 96.) In addition, the People argued that all of petitioner's claims were meritless. (*Id.*)

On June 16, 2009, the trial court denied petitioner's motion on procedural grounds pursuant to C.P.L. § 440.10(2)(b), because "all of the claims" were "appealable or pending on appeal, and sufficient facts appear on the record" to allow for "adequate review thereof" on direct appeal. (*Id.* at 103.) The trial court also decided the motion on its merits, including a specific analysis of the suppression and expert witness claims. (*Id.* at 104-05.) The trial court found that counsel had

"rigorously cross-examined" the People's medical examiner and that a more certain cause of death "would not advance the [petitioner]'s claim that his acts were unintentional." (*Id.* at 104.) As to the suppression claim, the court found that the trial court held a *Huntley* hearing and determined that the petitioner "knowingly, intelligently and voluntarily waived his right to remain silent." (*Id.*) The trial court held that defense "[c]ounsel provided a cogent and coherent defense" and there "was nothing deficient in the level of representation given to defendant." (*Id.* at 103-05.) Petitioner's leave to appeal was denied on September 15, 2009. (*Id.* at 106.)

### B. Petitioner's Direct Appeal

On May 27, 2010, with the assistance of appellate counsel, petitioner filed a direct appeal of his verdict. (ECF No. 6-2, State Ct. R. of Direct Appeal, at 2-38.) Petitioner argued that: the evidence was insufficient to prove intent to kill beyond a reasonable doubt; the trial court abused its discretion by not adjourning sentencing to allow for an expert report on petitioner's mental health; the sentence was excessive; and trial counsel was ineffective for not procuring a pre-sentence mental health report in time for sentencing. (*Id.* at 3-4.) Petitioner also filed a *pro se* supplemental brief dated August 2010. (*Id.* at 86-114.) In his *pro se* brief, petitioner repeated his ineffective assistance of counsel claims

from his first C.P.L. § 440.10 motion including counsel's failure to: investigate an alleged pretextual arrest; suppress petitioner's statement to police while in custody; introduce evidence of petitioner's drug addiction and its relation to petitioner's ability to develop an intent to kill; investigate petitioner's case; and call an expert witness to counter the government's medical examiner's testimony regarding Gibbs' cause of death. (*Id.* at 87, 111.)

The People responded to petitioner's May 27, 2010 brief on July 9, 2010. (*Id.* at 40.) The People argued that the evidence was sufficient to find petitioner guilty of second degree murder, the trial court did not abuse its discretion by not granting a sentencing adjournment, and the sentence was not excessive.[5] (*Id.* at 41, 73-84.) The People responded to petitioner's *pro se* brief on September 24, 2010. (*Id.* at 117.) The People argued that the court could not hear petitioner's ineffective assistance claims because they were not on the record, but, to the extent they were on the record, they had no merit.[6] (*Id.* at 116, 128-30.)

---

[5] Although the People argued in their response to petitioner's first C.P.L. § 440.10 motion that all of petitioner's ineffective assistance of counsel claims could be decided on the record, *supra*, they argued in this brief that some of those same claims were procedurally barred because they were *not* on the record. (ECF No. 6-2, State Ct. R. of Direct Appeal at 73.)
[6] Again, this argument contradicts the People's prior position in their response to petitioner's first C.P.L. § 440.10 motion. (ECF No. 6-3, State Ct. R. of First 440.10 Motion at 96.)

On February 15, 2011, the New York State Supreme Court, Appellate Division, Second Department entered an opinion affirming petitioner's conviction. *See People v. Miller*, 916 N.Y.S.2d 816 (N.Y. App. Div. 2d Dept. 2011). The state court held that there was sufficient evidence to find petitioner intended to kill Gibbs because petitioner occluded Gibbs' airways both by strangulation of Gibbs' neck and by petitioner's insertion of a bandana deep into Gibbs' mouth that blocked Gibbs' airway. *See id.* at 816-17. The state court found that petitioner's intent to cause Gibbs' death could be inferred from both of those acts by petitioner. *Id.* at 817. The state appellate court also found that three specific ineffective assistance of counsel arguments were not sufficiently on the record to be heard on direct appeal: failure to submit "evidence of psychiatric problems and drug addition," failure to "investigate certain matters," and failure "to call an expert witness." *Id.* However, the state court did reach the merits of petitioner's allegation that counsel failed to suppress his statements made to police while in custody. *See id.* The court held that the "subject statements provided proof from which the defense could advance a theory that the homicide was accidental," thus it was a reasonable trial strategy under the circumstances. *Id.* The court also found that the sentence was not excessive and petitioner's "remaining contentions are

without merit." *Id.* Petitioner's leave to appeal was denied by the Court of Appeals on April 21, 2011. *See People v. Miller*, 947 N.E.2d 1202 (N.Y. 2011).

### C. Petitioner's Second C.P.L. § 440.10 Motion.

On October 24, 2011, petitioner moved *pro se* for a second time to vacate his conviction pursuant to C.P.L. § 440.10. (ECF No. 6-4, State Ct. R. of Second 440.10 Motion, filed 12/10/2014, at 3.) Petitioner moved to vacate based on, *inter alia*, a pretextual arrest by the government, which petitioner alleged was used to extract a statement from him while in custody. (*Id.* at 12-22.) Petitioner also made various ineffective assistance of counsel claims, which he had made in his prior motions, including failure to: investigate the facts related to his arrest and the statement made by petitioner in custody; suppress the statements petitioner made in custody; investigate the facts and law of his defense; produce an expert to counter the government's medical examiner; present available mitigating evidence related to his drug use; and properly prepare a plausible defense related to petitioner's alleged intoxication at the time of Gibbs' death. (*Id.* at 23-47.)

On December 9, 2011, the People responded to petitioner's second 440 motion. (*Id.* at 158, 163-64.) The People argued that all of petitioner's claims were procedurally barred by C.P.L. § 440.10(2)(a), (2)(c), (3)(b), or (3)(c), and

that any claims that were not barred were without merit. (*Id.*
at 164.) Specifically, the People argued that petitioner's
suppression claim was barred because the court decided that
issue on direct appeal, and that petitioner's ineffective
assistance of counsel claim regarding an expert witness was
barred because the trial court rejected this claim on the merits
in petitioner's first C.P.L. § 440.10 motion. (*Id.* at 166-67,
175.)

On January 31, 2012, the trial court issued a one-page
memorandum and order denying petitioner's second motion. (*Id.*
at 204.) The court held that all of petitioner's claims were
procedurally barred by C.P.L. § 440.10(2)(a) because the trial
court found the claims were previously decided on their merits
in the prior C.P.L. § 440.10 motion and direct appeal. (*Id.*)
Petitioner's leave to appeal was denied on July 2, 2012. (*Id.*
at 205.)

### D. Petitioner's *Coram Nobis* Motion

On August 6, 2012, petitioner filed a *coram nobis*
motion alleging the People included misrepresentations in their
prior filings and that the courts had been playing "table
tennis" with petitioner's claims, bouncing the claims back and
forth between courts without ruling on the merits. (ECF No. 6-
5, State Ct. R. of *Coram Nobis* Motion, filed 12/10/2014, at 11.)
On September 17, 2012, petitioner's appellate counsel submitted

17

an affidavit explaining that petitioner was not complaining about her effectiveness as counsel but rather petitioner's inability to have his claims heard on their merits. (*Id.* at 72-73, 75.) His appellate counsel said petitioner may be right about the court erring on the procedural bar it utilized in the second C.P.L. § 440.10 decision, but *coram nobis* was not the proper application. (*Id.* at 73-75.)

On August 6, 2012, the People responded to petitioner's *coram nobis* motion by asserting that petitioner's allegations were, or that he should have known they were, false because the trial court's first C.P.L. § 440.10 decision did reach a merits decision on petitioner's claims. (*Id.* at 24-25.) Thus, when combined, the first C.P.L. § 440.10 decision and the decision on direct appeal reached the merits on most of petitioner's claims. (*Id.* at 33.)

On April 3, 2013, the New York State Supreme Court, Appellate Division, Second Department, denied petitioner's *coram nobis* motion in a three-sentence opinion. *See People v. Miller*, 961 N.Y.S.2d 787 (N.Y. App. Div. 2d Dept. 2013). The court held petitioner had "failed to establish that he was denied the effective assistance of appellate counsel." *Id.* Petitioner's leave to appeal was denied on September 28, 2013. (ECF No. 6-5, State Ct. R. of *Coram Nobis* Motion at 76.)

### E. Petitioner's C.P.L.R. § 5015 Motion (Third C.P.L. § 440.10 Motion)

On September 24, 2012, petitioner filed a *pro se* motion under New York Civil Practice Laws and Rules § 5015(a)(3) ("C.P.L.R. § 5015") to have the trial court vacate his judgment of conviction due to "fraud, misrepresentation and misconduct" from "the adverse party." (ECF No. 6-6, State Ct. R. of 5015(a)(3) Motion, filed 12/10/2014, at 4.) Petitioner alleged that the prosecution committed fraud by covering up police misconduct of illegally detaining petitioner on petit larceny charges and by knowingly using "fabricated testimony" of police officers. (*Id.* at 8, 18-19.)

On November 19, 2012, the People responded to petitioner's motion by pointing out that C.P.L.R § 5015(a)(3) applies to only civil cases "and thus has no application to" petitioner's case and by contending that the motion should instead be treated as a third C.P.L. § 440.10 motion. (*Id.* at 79.) The People argued that, as such, all claims were procedurally barred because they had previously been rejected on the merits or they could have been raised previously but were not. (*Id.* at 89.) The People also argued that petitioner's allegations that the prosecution knowingly using perjured testimony about the petit larceny charge is effectively a

suppression claim and, as such, the claim needed to be heard on
direct appeal pursuant to C.P.L. § 710.40. (*Id.* at 95-96.)

On December 7, 2012, the trial court treated
petitioner's motion as a third C.P.L. § 440.10 motion and denied
the motion. (*Id.* at 98-99.) The trial court rejected all prior
claims under C.P.L. § 440.10(2)(a) and new claims were rejected
under C.P.L. § 440.10(2)(c) for not being raised in an earlier
appeal. (*Id.* at 99.) As to the claims that the prosecution
knowingly used perjured testimony of police, the court found
that they were "either bald assertions lacking any credible
evidence or matters that were previously decided." (*Id.*)
Petitioner's leave to appeal was denied on June 24, 2013. (*Id.*
at 100.)

### F.    Petitioner's Fourth C.P.L. § 440.10 Motion

On April 4, 2014, petitioner, with the assistance of
counsel, filed a fourth C.P.L. § 440.10 motion to vacate his
conviction and to be granted an evidentiary hearing to develop
his claim. (ECF No. 6-7, State Ct. R. of Fourth 440.10 Motion,
filed 12/10/2014, at 2-17.) Petitioner alleged that no court
had "ever evaluated all of [petitioner's] claims of ineffective
assistance of counsel, including those which require further
evidentiary development, in the proper context of each other
claim." (*Id.* at 2 (emphasis omitted).) Petitioner largely
repeated his prior claims, including trial counsel's failure to

obtain a mental health pre-sentence report from the Osborne
Society. (*Id.* at 3-5.) Petitioner added new claims about trial
counsel's failure to raise the effect of drug withdrawal induced
psychosis on petitioner's statements made to police and failure
to raise extreme emotional disturbance or insanity as a defense.
(*Id.* at 3-4.)

The People responded to petitioner's fourth C.P.L. §
440.10 motion on May 13, 2014. (*Id.* at 18-55.) The People
argued that all of petitioner's claims were procedurally barred
either for previously being ruled on the merits or because new
claims could have been raised in prior appeals. (*Id.* at 32.)

On July 11, 2014, the trial court denied petitioner's
motion. (*Id.* at 103.) The trial court ruled that all of the
petitioner's claims were procedurally barred under C.P.L. §
440.10(2)(c) and (3)(c), and that petitioner "failed to raise
and support any argument based on information that is outside
the trial record." (*Id.* at 104.) Petitioner did not file a
leave to appeal the denial of the fourth C.P.L. § 440.10 motion.

## IV. <u>Petitioner's Federal Habeas Petition</u>

On October 6, 2014, petitioner filed a petition for a
writ of habeas corpus pursuant to Section 2254 seeking to vacate
his conviction. (ECF No. 1, Pet.) Petitioner attached 218
pages of documents, which, among other exhibits, included two
attachments that laid out "supporting facts" (Attachment A) and

elaborated on his first ground for relief of insufficient
evidence (Attachment B). (ECF No. 1-2, Exhibits to Pet., filed
10/06/2014; ECF No. 1-3, Exhibits to Pet., filed 10/06/2014.)
In the petition itself, ground two was described as
"[i]neffective assistance of trial counsel" and ground three as
"[p]rosecutor knowingly used perjured testimony, [p]rosecutor
committed fraud, misrepresentation and misconduct[.]" (ECF No.
1, Pet. at 6, 8.) Petitioner did not provide supporting facts
for ground two or three in his October 6, 2014 petition.

On November 10, 2014, petitioner submitted a Motion to
Amend his petition and included a supplemental habeas petition
that elaborated upon his second and third grounds for habeas
relief. (ECF No. 5, Supplemental Petition ("Supp. Pet."), filed
11/10/2014.) Petitioner included Attachment C and Attachment D,
which provided specific allegations for his ineffective
assistance and prosecutorial misconduct claims, respectively.
(ECF No. 5-1, Attachment C to Supp. Pet., filed 11/10/2014; ECF
No. 5-2, Attachment D to Supp. Pet., filed 11/10/2014.)

On December 10, 2014, the People submitted their
response to the petition, which included the complete state
court trial record and all filings from the subsequent state
court appeals. (ECF No. 6, People's Response, filed
12/10/2014.) Also on December 10, 2014, the court granted
petitioner's Motion to Amend and stated that "the additional

facts set forth in the attachments to petitioner's" motion would be considered. (ECF Entry dated 12/10/2014.) The People were also given an opportunity to file "additional briefing to respond to" petitioner's supplemental brief. (*Id.*) On December 17, 2014, the People informed the court that they would not be filing an additional answer to the petition. (ECF. No 7, People's 12/17/2004 Letter, filed 12/17/2014, at 1.)

On February 13, 2015, petitioner filed a response to the People's submission. (ECF No. 10, Petitioner's Response, filed 2/13/2014.) On November 7, 2016, petitioner filed a second supplemental petition with exhibits. (ECF No. 13, Second Supp. Pet.) This supplement added more detail to various ineffective assistance of counsel claims raised in petitioner's first supplemental petition and asserted a new claim. (*Id.* at 2-5, 12-16.) On November 28, 2016, the People informed the court that they would not oppose petitioner amending his petition with the November 3, 2016 filing and that the People would continue to rely on their December 10, 2014 papers. (ECF No. 14, People's 11/28/2016 Letter, filed 11/28/2016.)

### STANDARD OF REVIEW

A writ of habeas corpus filed by an individual in state custody is governed by, *inter alia*, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). 28 U.S.C. § 2254. Section 2254 of AEDPA provides that a district court

shall issue a writ of habeas corpus for a petitioner in state custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2244 provides that a one-year statute of limitations applies to "an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1); *see generally* 28 U.S.C. § 2244(d).

## I.    State Court Application of Federal Law

A district court shall not grant a writ of habeas corpus unless "the applicant has exhausted the remedies available in the courts of the State," "there is an absence of available State corrective process," or "circumstances exist that render [such State corrective] process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1).

A district court may grant a writ of habeas corpus for claims that were adjudicated on the merits in state court and the adjudication produced a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). "A state court 'adjudicate[s]' a state prisoner's federal claim on the merits when it (1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment." *Sellan v. Kuhlman*, 261

F.3d 303, 312 (2d Cir. 2001) (brackets in original) (quoting 28 U.S.C. § 2254(d)(1)); *see also Reznikov v. David*, Nos. 05-CV-1006 (RRM), 05-CV-1008 (RRM), 2009 WL 424742, at *3 (E.D.N.Y. Feb. 20, 2009) ("Under AEDPA, a proper merits adjudication requires only that (a) a federal claim be raised, and (b) that it be disposed of on substantive, rather than procedural grounds."). "When a state court [adjudicates a federal claim on the merits], a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim — even if the state court does not explicitly refer to either the federal claim or to relevant federal case law." *Sellan*, 261 F.3d at 312.

Clearly established federal law is limited to the jurisprudence of the Supreme Court at the time of the relevant state court decision. *Howard v. Walker*, 406 F.3d 114, 122 (2d Cir. 2005). The "contrary to" and "unreasonable application" clauses are analyzed independently. *Stultz v. Artus*, No. 04-CV-3170 (RRM), 2013 WL 937830, at *5 (E.D.N.Y. Mar. 8, 2013). A state court's decision is contrary to federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000) (O'Connor, J., concurring and writing for

the majority in this part). An unreasonable application of law occurs when "the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* Unreasonableness is measured objectively, and requires "a 'higher threshold' than 'incorrect.' " *Stultz*, 2013 WL 937830, at *5 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). The state court's application must have "[s]ome increment of incorrectness beyond error. . . . [H]owever, . . . the increment need not be great[.]" *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000). If a district court determines a state court's application of law was unreasonable, "it must next consider whether such error was harmless." *Stultz*, 2013 WL 937830, at *5 (citations and internal quotation marks omitted).

Apart from a state court's unreasonable or contrary application of federal law, a district court may grant a writ of habeas corpus when the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). State court determinations of facts are presumed correct, however, and the petitioner bears the burden of "rebutting the presumption of correctness by clear and convincing evidence." *Id.* at § 2254(e)(1). A district court

"may overturn a state court's application of federal law only if it is so erroneous that there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Nevada v. Jackson*, 569 U.S. 505, 508-09 (2013) (per curiam) (citations and internal quotation marks omitted). A federal court "cannot grant habeas relief where a petitioner's claim pursuant to applicable federal law, or the U.S. Constitution, has been adjudicated on its merits in state court proceedings in a manner that is not manifestly contrary to common sense." *Santone v. Fischer*, 689 F.3d 138, 148 (2d Cir. 2012) (quoting *Anderson v. Miller*, 346 F.3d 315, 324 (2d Cir. 2003)).

## II. <u>Exhaustion Requirement</u>

Pursuant to Section 2254, a district court may not grant a habeas petition made by "a person in custody pursuant to the judgment of a State court" unless "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). This rule is "grounded in [] concerns for federalism and comity between the state and federal sovereigns . . . [and] ensures that federal courts respect the 'States' interest in correcting their own mistakes.' " *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001) (other internal citation omitted) (quoting *Coleman v. Thompson*, 501 U.S. 722, 732 (1991)). To satisfy the exhaustion requirement, a

petitioner must have "(i) presented the federal constitutional claim asserted in the petition to the highest state court (after preserving it as required by state law in the lower courts) and (ii) informed that court (and lower courts) about both the factual and legal bases for the federal claim." *Ramirez v. Attorney Gen. of New York*, 280 F.3d 87, 94 (2d. Cir. 2001) (citing, *inter alia*, *Picard v. Connor*, 404 U.S. 270, 276-77 (1971)); *see also Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994) ("To fulfill the exhaustion requirement, a petitioner must have presented the substance of his federal claims to the highest court of the pertinent state." (citation and internal quotation marks omitted)).

"Even if a federal claim has not been presented to the highest state court or preserved in lower state courts under state law, it will be deemed exhausted if it is, as a result, then procedurally barred under state law." *Ramirez*, 280 F.3d at 94. Where a claim is exhausted but procedurally barred, a court may nonetheless review it if the petitioner shows "cause for the default and prejudice, or demonstrate[s] that failure to consider the claim will result in a miscarriage of justice (i.e., the petitioner is actually innocent)." *Aparicio*, 269 F.3d at 90 (citing *Coleman*, 501 U.S. at 748-50). If a state court ruling contains a plain statement that a claim is procedurally barred, then the federal court may not review it,

even if the state court also rejected the claim on the merits in the alternative. *See Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989) (explaining that "a state court need not fear reaching the merits of a federal claim in an *alternative* holding" when it explicitly invokes a state procedural ground as a separate basis (emphasis in original)).

### III. **Treatment of *Pro Se* Pleadings**

In the instant action, petitioner is proceeding *pro se.* A *pro se* petitioner's pleadings are held to "less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations and internal quotation marks omitted), and are construed "to raise the strongest arguments that they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis omitted). "Nonetheless, a *pro se* [litigant] is not exempt from compliance with relevant rules of procedural and substantive law." *Rivera v. United States*, No. 06-CV-5140 (SJF), 2006 WL 3337511, at *1 (E.D.N.Y. Oct. 4, 2006) (citing *Faretta v. California*, 422 U.S. 806, 834 n.36 (1975)). Petitioner's papers are evaluated accordingly.

### DISCUSSION

On October 6, 2014, petitioner filed this timely petition for a writ of habeas corpus pursuant to Section 2254

seeking to vacate his conviction.[7]  (ECF No. 1, Pet. at 1.)
Petitioner, who is currently incarcerated, raises three general
grounds in his original habeas petition, which he expanded upon
in two supplemental briefs: (1) there was insufficient evidence
for the trial court to find an intent to kill; (2) petitioner's
trial counsel was ineffective; and (3) prosecutorial misconduct.
(ECF No. 1, Pet. at 4-5; ECF No. 5-1, Attachment C to Supp. Pet.
at 1, 5-6; ECF No. 5-2, Attachment D to Supp. Pet. at 1-2; ECF
No. 13, Second Supp. Pet. at 3, 10, 12, 14.)

Petitioner has exhausted his remedies in state court
by way of his motions to vacate pursuant to C.P.L. § 440.10 and
his direct appeal to the Appellate Division and the New York
Court of Appeals.  *See supra* Facts Section III.  However, some
of those claims, as seen below, are exhausted because they were
never decided on their merits in state court and are now
procedurally barred.

For the reasons set forth below, the petition is
DENIED.

---

[7] The court adopts the tolling calculation presented by respondent, but with
one correction. (ECF No. 10, Gov't Response at 2 n.1.)  Petitioner's fourth
C.P.L. § 440.10 motion was filed on April 4, 2014, not April 14, 2014, as
respondent erroneously stated. (ECF No. 6-7, State Ct. R. of Fourth 440.10
Motion at 2.)  The number of days tolled for the fourth C.P.L. § 440.10
motion remains 87 days when using April 4, 2014.

## I.   Insufficient Evidence Claim

The first ground of petitioner's habeas petition is that his trial verdict was not supported by sufficient evidence. (ECF No. 1-3, Exhibits to Pet. at 57.)   Petitioner included this claim in his direct appeal, it was denied on its merits, and leave to appeal the decision to the Court of Appeals was denied. Thus, this claim was exhausted in the state court system on its merits and can be reviewed by this court.

### A.   Legal Standard

On habeas review, the court's evaluation of whether evidence was sufficient to sustain a conviction is subject to a stringent standard of review.   The conviction will be upheld if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, after the evidence is viewed in the light most favorable to the prosecution.   *Linton v. Bradt*, 775 F. Supp. 2d 574, 581 (E.D.N.Y. 2011) (citing *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *Einaugler v. Supreme Court of the State of New York*, 109 F.3d 836, 840 (2d Cir. 1997)).   Indeed, "[e]ven when faced with a record of historical facts that supports conflicting inferences, [the court] must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution. " *Archer v. Fischer*, No. 05-CV-

4990 (JFB), 2009 WL 1011591, at *8 (E.D.N.Y. Apr. 13, 2009)

(internal quotation marks omitted) (quoting *Wheel v. Robinson*,

34 F.3d 60, 66 (2d Cir. 1994)). Stated differently, the court

"must defer to the jury's 'assessments of the weight of the

evidence and the credibility of witnesses.' " *Leveille v.*

*Ercole*, No. 05-CV-5602 (ARR), 2006 WL 3257233, at *4 (E.D.N.Y.

Nov. 9, 2006) (quoting *Maldonado v. Scully*, 86 F.3d 32, 35 (2d

Cir. 1996)). The "inquiry does not focus on whether the trier

of fact made the correct guilt or innocence determination, but

rather whether it made a rational decision to convict or

acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993) (emphasis

omitted).

## B. Analysis

A federal court reviewing an insufficiency of the

evidence claim must look to state law to determine the elements

of the crime. *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d

Cir. 1999). Second degree homicide in New York State requires

proof of intent to kill beyond a reasonable doubt. N.Y. Penal

Law § 125.25. In the instant case, viewing the evidence in the

light most favorable to the prosecution, the verdict was

supported by ample evidence with which the trial court could

find such intent. The strongest evidence as to petitioner's

intent, which the state Appellate Division's decision noted when

denying petitioner's direct appeal, was that there were two

possible causes of death, and each would have been sufficient to kill Gibbs on its own. From this, the Appellate Division found that it was reasonable for the trial court to conclude that either petitioner's acts of strangulating Gibbs or pushing a bandana into her throat, which obstructed her airways and caused her death, demonstrated an intent to kill her. Petitioner argues that the hog-tying of Gibbs is actually evidence that he thought she was still alive, and thus lacked any intent to kill. However, when faced with two possible inferences, the court "must presume . . . that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Wheel v. Robinson*, 34 F.3d 60, 66 (2d Cir. 1994) (citing *Jackson*, 443 U.S. at 319).

Here, the court presumes that the trial court concluded petitioner's hog-tying of Gibbs was meant to ensure her death, and not to impair her mobility upon waking. In fact, the trial court specifically rejected petitioner's argument about his hog-tying of Gibbs when finding that petitioner's "acts lead[] to the unavoidable conclusion beyond a reasonable doubt that [petitioner] intended to cause the death of Miss Gibbs." (ECF No. 6-1, Trial Tr. at 258.) As a result, the Appellate Division's determination that the evidence was legally sufficient was not based on an unreasonable application of federal law. *See Wise v. Superintendent of Attica Corr.*

*Facility*, No. 08-CV-6312 (MAT), 2010 WL 3943733, at *11

(W.D.N.Y. Oct. 7, 2010) (finding evidence of intent to kill

sufficient where evidence, as here, included, *inter alia*, prior

arguments between defendant and victim, death by asphyxiation,

defendant covering victim with blankets, inconsistent stories to

police, and suspicious comments to others); *see also Wynder v.

Smith*, No. 09-CV-4541 (JLC) (LAP), 2011 WL 70556, at *13

(S.D.N.Y. Jan. 10, 2011) (finding evidence of intent to kill

sufficient where petitioner "admitted to killing [the victim]

and [the victim] was found strangled with a shirt around her

neck and her jaw broken in two places"). Accordingly,

petitioner's sufficiency of the evidence claim is denied.

## II.  Ineffective Assistance of Counsel

The second ground for petitioner's habeas petition

involves multiple claims of ineffective assistance of his trial

counsel. In three separate habeas filings, the petitioner's

combined claims of ineffective assistance include trial

counsel's failure to: (1) pursue a viable suppression claim for

petitioner's statements made while in police custody; (2)

conduct pretrial investigations of petitioner's statements made

while in police custody during an alleged pretextual detention;

(3) provide expert medical testimony or consultation to counter

the People's medical examiner; (4) prepare for trial or mount a

substantial defense; (5) notify the Osborne Society about

petitioner's sentencing date in order to acquire a presentence report; (6) raise an intoxication defense and to utilize evidence establishing the seriousness of petitioner's drug addiction; as well as (7) that the cumulative effect of all ineffective assistance errors denied him a fair trial; and 8) trial counsel's presentation of an alleged false narrative of what happened during Gibbs' death.[8]  (ECF No. 5-1, Attachment C to Supp. Pet. at 1, 5-6; ECF No. 13, Second Supp. Pet. at 3, 10, 12, 14.)

Claims 1, 2, and 7 were exhausted on the merits in state court.  However, claims 3 and 4 were rejected by procedural bars in various of plaintiff's motions pursuant to C.P.L. § 440.10(2)(a).  However, a denial under C.P.L § 440.10(2)(a) is not an independent and adequate state ground that precludes federal habeas review.  *Silverstein v. Henderson*, 706 F.2d 361, 368 (2d Cir. 1983); *Soberanis v. Brown*, No. 10-CV-

---

[8] The People contend that petitioner is re-alleging all of his prior ineffective assistance of counsel claims raised in every prior motion that petitioner made in state court.  (ECF No. 6, People's Memorandum of Law, at 5 n.2.)  However, petitioner makes a specific, numbered list of his ineffective assistance of counsel claims in his habeas papers, with no language about incorporating any other ineffective assistance of counsel arguments made below.  (ECF No. 5-1, Attachment C to Supp. Pet. at 1, 5-6; ECF No. 13, Second Supp. Pet. at 3, 10, 12, 14.)  The claims specified in petitioner's habeas papers are the only claims this court will review.  Thus, they do not include claims that trial counsel failed to: challenge the legal sufficiency of the evidence, challenge false evidence presented at the *Sandoval* hearing, make an opening statement, object to improper comments made by the prosecutor, adequately cross-examine the People's witnesses, investigate and present a defense of insanity or extreme emotional disturbance, or file an appeal by the deadline. (*Compare id., with* ECF No. 6, People's Memorandum of Law at 4-5.)

2695 (RA) (RLE), 2014 WL 5038364, at *1 n.1 (S.D.N.Y. Sept. 30, 2014) (collecting cases demonstrating disagreement within the Second Circuit on this point, but noting the Second Circuit "already settled the matter" in *Silverstein*). The court therefore reviews claims 3 and 4 under the deferential standard of AEDPA.

Petitioner raised claim 5 in his first C.P.L. § 440.10 motion, which was rejected both procedurally and on its merits. He also raised claim 5 in his fourth C.P.L. § 440 motion, which the trial court denied under C.P.L. § 440.10(2)(c) and (3)(c), which both relate to failure to previously raise an issue. In determining whether the trial court's reliance on § 440.10(2)(c) and (3)(c) was "adequate" to support the judgment, the court must examine whether these procedural rules are " 'firmly established and regularly followed' by the state in question." *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999) (quoting *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)). "Whether application of the procedural rule is firmly established and regularly followed must be judged in the context of the specific circumstances presented in the case, an inquiry that includes an evaluation of the asserted state interest in applying the procedural rule in such circumstances." *Louis v. Fischer*, No. 04-CV-2887 (KAM), 2007 WL 4198255, at *20 (E.D.N.Y. June 25, 2007) (internal

quotation marks omitted) (citing *Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir. 2003)).

Here, the claim was previously raised in petitioner's first C.P.L. § 440 motion. Therefore, the state court was incorrect in finding that the claim had not previously been raised. The correct procedural bar would have been C.P.L. § 440.10(2)(a). The use of § 440.10(2)(c) and (3)(c) by the state court to deny this claim is inadequate to bar federal habeas review. As a result, claim 5 is not procedurally barred and the court will consider the merits of claim 5.

Petitioner raised a version of claim 6 in his first C.P.L. § 440.10 motion when he discussed the failure of trial counsel to bring up his drug addiction in connection to his intent to kill. (*See* ECF No. 6-3, State Ct. R. of First 440.10 Motion at 17-18.) A version of claim 6 also appeared in petitioner's second C.P.L. § 440.10 motion. (ECF No. 6-4, State Ct. R. of Second 440.10 Motion at 44-47.) Because this claim, similar to claim 5, failed on its merits in the first C.P.L. § 440.10 motion and was then found to be procedurally barred by the trial court under C.P.L. § 440.10(2)(a) after the second C.P.L. § 440.10 motion, the court will consider claim 6 on its merits.

Petitioner never raised claim 8 in a prior appeal in New York State Court, and it is therefore now barred from being

raised in state court under various C.P.L. § 440.10 provisions.
If a petitioner's "claim has not been exhausted and the
petitioner no longer has a state forum in which to raise the
claim, the claim should be deemed exhausted but procedurally
barred from habeas review." *Desrosiers v. Phillips*, No. 05-CV-
2941 (CBA), 2007 WL 2713354, at *3 (E.D.N.Y. Sept. 13, 2007)
(citing, *inter alia*, *Bossett*, 41 F.3d at 828-29). Thus, claim 8
is procedurally barred from review by the court.[9]

### A. Legal Standard

The right to effective assistance of counsel
guaranteed by the Sixth Amendment to the United States
Constitution was "clearly established" by the Supreme Court in
*Strickland v. Washington*, 466 U.S. 668 (1984). *Williams*, 529
U.S. at 390-91. Under *Strickland*, a defendant claiming
ineffective assistance of counsel must demonstrate that both
prongs of *Strickland* are satisfied: "deficient performance by
counsel and prejudice." *Premo v. Moore*, 562 U.S. 115, 122
(2011) (citation omitted). However, "[t]he *Strickland* standard

---

[9] Petitioner also requests an evidentiary hearing in order to further develop
the record for his ineffective assistance of counsel claims. (ECF No. 13,
Second Supp. Pet. at 16.) Under 28 U.S.C. § 2254(d), which applies to habeas
claims that were first adjudicated on the merits in state court proceedings,
the district court may not rely upon new evidence produced at an evidentiary
hearing to determine habeas relief, and must instead limit its review to "the
record that was before the state court that adjudicated the claim on the
merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *see also Lopez v.
Miller*, 906 F. Supp. 2d 42, 51-52 (E.D.N.Y. 2012). Because all of the claims
that the court is evaluating were adjudicated on their merits in state court,
the motion for an evidentiary hearing is denied.

is a general one, so the range of reasonable applications is substantial." *Harrington v. Richter*, 562 U.S. 86, 105 (2011).

To establish deficient performance, a person challenging a conviction must show that counsel's representation "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. A court reviewing an attorney's performance must be "highly deferential" and must make "every effort . . . to eliminate the distorting effects of hindsight" and must evaluate "the conduct from counsel's perspective at the time." *Id.* at 689. Thus, a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.; see also Brown v. Greene*, 577 F.3d 107, 110 (2d Cir. 2009).

In establishing prejudice, a habeas petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, "[c]ounsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.' " *Harrington*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 687). "In assessing prejudice stemming from the

failure to investigate and introduce certain evidence, a court must consider 'all the relevant evidence that the jury would have had before it,' had the evidence been introduced, including unfavorable evidence." *Barnes v. Burge*, 372 F. Appx. 196, 199 (2d Cir. 2011) (emphasis in original) (quoting *Wong v. Belmontes*, 558 U.S. 15, 20 (2009) (per curiam)).

Because the standards under *Strickland* and Section 2254(d) are both highly deferential, "when the two apply in tandem, review is 'doubly' " deferential. *Harrington*, 562 U.S. at 105 (quoting *Knowles*, 556 U.S. at 123). As the Supreme Court warned in *Harrington*:

> [f]ederal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* Because the trial court and appellate court adjudicated on their merits all of petitioner's ineffective assistance claims currently before this court, the "doubly" deferential standard of review under Section 2254 applies.

## B. Application

The trial court and the Appellate Division adjudicated most of petitioner's ineffective assistance of counsel claims on the merits. When ruling on petitioner's ineffective assistance of counsel claims, the trial court applied the federal

*Strickland* standard and New York State's "meaningful representation" standard. (ECF No. 6-3, State Ct. R. of First 440.10 Motion at 103-04.) "The Second Circuit has repeatedly emphasized that the New York standard for ineffective assistance of counsel is not contrary to *Strickland* . . . ." *Kelly v. Lee*, No. 11-CV-3903 (CBA), 2014 WL 4699952, at *12 (E.D.N.Y. Sept. 22, 2014); *see also Eze v. Senkowski*, 321 F.3d 110, 122-24 (2d Cir. 2003). Thus, the difference between the second prong of the New York standard and the federal standard, *see Kelly*, 2014 WL 4699952, at *13 (explaining that under the New York standard "prejudice is examined more generally in the context of whether the defendant received meaningful representation" (citation and internal quotation marks omitted)), is not sufficient to render the Appellate Division's decision contrary to or an unreasonable application of Supreme Court law.

When evaluating a claim for ineffective assistance of counsel under AEDPA, a court asks "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105. Here, there are reasonable arguments that trial counsel satisfied the *Strickland* standard for each of the claims raised by petitioner. Accordingly, petitioner's ineffective assistance of counsel claims are denied.

1. *Failure to Suppress Petitioner's Statement Made While in Custody*

Petitioner's first claim of ineffective assistance of counsel is that trial counsel did not suppress the oral or written statements that petitioner made to police while in custody. At trial, defense counsel consented to the admissibility of the statement and used it when arguing that petitioner did not intend to kill Gibbs. Petitioner raised this suppression issue on direct appeal and the state court ruled that trial counsel's use of petitioner's statement was "meaningful representation." *Miller*, 916 N.Y.S. 2d at 817. The court reasoned that the statement "provided proof from which the defense could advance a theory that the homicide was accidental, and thus reflected an objectively reasonable and legitimate trial strategy under the circumstances and evidence presented." *Id.*

It is well settled that, under *Strickland*'s first prong, "strategic decisions regarding the challenging of evidence and witnesses cannot be second-guessed in an effort to support an ineffective assistance of counsel claim." *Mejia v. United States*, 862 F. Supp. 2d 263, 277 (E.D.N.Y. 2012). Trial counsel's "decision whether or not to file a suppression motion is one such tactical decision that courts generally will not disturb." *United States v. Wilson*, 146 F. Supp. 3d 472, 478

(E.D.N.Y. 2015); *see also United States v. Jacobs*, 270 F. Supp. 2d 293, 298 (D. Conn. 2003) (describing decision not to argue for suppression as a "sound tactical decision"). Here, the decision by trial counsel to utilize petitioner's statement about a brief struggle with Gibbs was a reasonable strategic choice that positioned him well to argue for lesser included charges devoid of an intent to kill. Petitioner's statement was the only evidence that told a version of events that could explain Gibbs' death as unintended. Thus, trial counsel's strategy of combining petitioner's statement to police with the admission from the medical examiner that Gibbs could have died almost instantly from brief pressure to her neck was a reasonable one that this court will not disturb.

Significantly, petitioner also fails to demonstrate that the outcome would have been different but for the conduct of trial counsel (the second prong of *Strickland*), though it is not necessary to address the second prong once petitioner has failed under the first. *See Bennett v. United States*, 663 F.3d 71, 85 (2d Cir. 2011) (finding ineffective assistance of counsel claim "must be rejected if the defendant fails to meet either the performance prong or the prejudice prong"). In order to demonstrate ineffective assistance of counsel for failing to make a motion to suppress, "the underlying motion must be shown to be meritorious, and there must be a reasonable probability

that the verdict would have been different if the evidence had been suppressed." *United States v. Matos*, 905 F.2d 30, 32 (2d Cir. 1990) (citing *Kimmelman v. Morrison*, 477 U.S. 365, 375-76 (1986)).

Here, petitioner signed his written statement and a *Miranda* form indicating that he was waiving his *Miranda* rights.[10] Because petitioner waived his constitutional rights after being advised of them, "any motion to suppress the signed statement on the part of petitioner's counsel would likely have failed and, therefore, does not constitute ineffective assistance of counsel." *Silent v. Perlmann*, No. 07-CV-4524 (JFB), 2008 WL 5113418, at *11 (E.D.N.Y. Nov. 25, 2008). Even if petitioner's statement to police were suppressed, there was ample evidence making it not "unreasonable for counsel to have concluded that petitioner would have been convicted at trial" regardless of suppression. *Id.* at *11.

For the reasons stated above, the Appellate Division's decision denying petitioner's ineffective assistance claim regarding the suppression of petitioner's statement was not "contrary to," nor did it involve "an unreasonable application

---

[10] Petitioner argues in his petition that he did not agree to waive his rights. (ECF No. 5-2, Attachment D to Supp. Pet. at 2.) The trial court record contains testimony that petitioner did waive his rights multiple times, as well as testimony that petitioner refused to sign the first *Miranda* card after agreeing to waive his rights verbally. (ECF No. 6-1, Trial Tr. at 138-40, 153-54, 164-67.)

of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). The suppression-based ineffective assistance of counsel claim is denied.

   2. *Failure to Investigate Circumstances Surrounding Petitioner's Petit Larceny Arrest*

In his second ineffective assistance of counsel claim, petitioner argues that trial counsel failed to investigate the circumstances surrounding petitioner's allegedly unlawful custody, during which time he wrote his incriminating statement. (ECF No. 5-1, Attachment C to Supp. Pet. at 1.) Petitioner argues that his arrest for petit larceny was pretextual and, as a result, his statement should have been suppressed. (*Id.*) This court has already determined, *supra*, that trial counsel's use of petitioner's statement was not ineffective assistance of counsel. Because petitioner's failure to investigate claim is essentially a claim that his statement should have been suppressed, the court need not review the merits to determine that this ineffective assistance of counsel claims fails, and it is denied.

   3. *Failure to Provide or Consult with a Medical Expert*

Petitioner's third ineffective assistance of counsel claim is that trial counsel failed to provide an expert witness to counter the testimony of the medical examiner called by the People. The trial court acknowledged in its opinion denying

petitioner's first C.P.L. § 440.10 motion that, despite the lack of a defense expert, trial "counsel rigorously cross-examined the Medical Examiner about the manner and cause of death." (ECF No. 6-3, State Ct. R. of First 440.10 Motion at 104.) By cross-examining the medical examiner, trial counsel elicited testimony essential to petitioner's defense. The medical examiner admitted it was possible that a single blow to the neck could have been sufficient to kill Gibbs, as opposed to a sustained strangulation of 15 seconds. (ECF No. 6-1, Frederic Trial Tr. at 51-55.) This fit perfectly into trial counsel's argument during summation of an accidental death during a quick struggle. (ECF No. 6-1, Trial Tr. at 238.) Thus, petitioner's trial was one of "the general class of cases recognized in *Harrington* where cross-examination of the People's expert alone could be a viable, and thus constitutionally effective, strategic choice." *Morency v. Annucci*, No. 14-CV-672 (DLI) (ST), 2017 WL 4417718, at *14 (E.D.N.Y. Mar. 20, 2017) (citing *Harrington*, 562 U.S. at 111), *report and recommendation adopted*, 14-CV-672 (DLI) (ST), 2017 WL 4417647 (E.D.N.Y. Sept. 30, 2017); *see, e.g., Pierre v. Ercole*, 560 F. Appx. 81, 82-83 (2d Cir. 2014) (summary order) (finding trial counsel was not ineffective for choosing to vigorously cross-examine the state's pathologist instead of calling his own doctor to cast doubt on the pathologist's testimony).

Petitioner also has not provided an affidavit or other evidence from an expert establishing that alternative testimony existed that would have undermined the state medical examiner's testimony. Given "the absence of a specific proffer of what an expert would have said that might be relevant to [petitioner's] case," and the deference given to state court decisions under the AEDPA, petitioner's ineffective assistance claim based on trial counsel's decision to not call an expert witness is denied. *McDowell v. Heath*, No. 09-CV-7887 (RO) (MHD), 2013 WL 2896992, at *40 (S.D.N.Y. June 13, 2013) (collecting cases).

4. *Failure to Prepare for Trial or Mount a Substantial Defense*

Petitioner's fourth ineffective assistance of counsel claim is that trial counsel failed to prepare for trial or mount a substantial defense. It appears that petitioner brings this claim because he believes trial counsel "failed to put to shape or form any plausible theory of defense." (ECF No. 13, Second Supp. Pet. at 14.) Specifically, petitioner suggests trial counsel was ineffective when he moved for a judgment of acquittal after the People rested without providing the trial court with any "proof in support" of the motion. (*Id.*) However, trial counsel was almost certainly aware that such a motion had little merit in this case. *See United States v. Wu*, No. 02-CR-271 (GEL), 2009 WL 3053741, at *3 (S.D.N.Y. Sept. 17, 2009) (finding counsel could not "be faulted for not arguing the

point more vigorously" when the motion was "without merit").

Because this is the only specific example cited by petitioner,

his otherwise conclusory allegations regarding his counsel's

failure to prepare a defense are insufficient to support an

ineffective assistance claim. *See Besser v. Walsh*, No. 02-CV-

6775 (AJP), 2003 WL 22093477, at *36 (S.D.N.Y. Sept. 10, 2003)

(collecting cases), *report and recommendation adopted*, No. 02-

CV-6775 (LAK), 2003 WL 22681429, at *1 (S.D.N.Y. Nov. 13, 2003);

*see also Morales v. United States*, No. 98-3700, 1999 WL 1015641,

at *2 (2d Cir. 1999) (denying the petitioner's "conclusory

assertion[s]" as insufficient to support an ineffective

assistance of counsel claim). In addition, it is clear from the

state court record that trial counsel did provide a plausible

defense of accidental death during a struggle (ECF No. 6-1,

Trial Tr. at 238), which utilized testimony from the state

medical examiner and the petitioner's statement to police.

Accordingly, the state court's finding that this claim failed

was not an unreasonable application of federal law, and the

claim is denied.

   5. *Failure to Obtain an Independent Presentence Report from a
      Mental Health Organization for Petitioner's Sentencing*

        Petitioner's fifth ineffective assistance claim is

that trial counsel failed to obtain a presentence report from

the Osborne Society, which would have reflected its independent

opinion of petitioner's mental health. (ECF No. 5-1, Attachment
C to Supp. Pet. at 6.) Petitioner does not go beyond this
general description in his petition, but the court looks to his
more fleshed out argument from his first and fourth C.P.L. §
440.10 motions given the more lenient standard of interpreting
claims of *pro se* petitioners. (ECF No. 6-3, State Ct. R. of
First 440.10 Motion at 23; ECF No. 6-7, State Ct. R. of Fourth
440.10 Motion at 4.)

At the beginning of petitioner's sentencing hearing,
trial counsel requested an adjournment because he had not yet
received the Osborne Society's report of petitioner's mental
health. The trial court denied the application and proceeded
with sentencing. The trial and sentencing records are devoid of
any information as to why trial counsel was unable to obtain the
report, but nonetheless they do not contain evidence pointing to
fault on the part of trial counsel.

Even without the Osborne Society report, trial counsel
raised petitioner's psychiatric history, suicidality, and drug
addiction as mitigating factors during sentencing. Trial
counsel also elicited testimony from Officer McTighe that he
believed petitioner had consumed pills in a suicide attempt
after Gibbs' death. In addition, there was a substantial amount
of information about petitioner's mental health struggles
presented to the trial court for sentencing purposes, including

49

a psychiatric evaluation from the Riker's Island prison. The
Riker's Island evaluation indicated that petitioner had: been
raised in a one-parent household since he was two years old;
been hospitalized or in residential care for psychiatric
reasons; attempted suicide twice, in November 2005 and May 2006;
abused alcohol on a daily basis; abused marijuana since the age
of nine and had a $200 per day crack-cocaine habit since the age
of 28 (he was 36 when the report was prepared); had received a
diagnosis of bipolar disorder and depression in 2006; and had
been taking three medications daily. (ECF No. 6-2, State Ct. R.
of Direct Appeal at 81-82.)

Because trial counsel attempted to obtain an
adjournment, and there is no evidence in the record that not
obtaining the mental health report was trial counsel's fault, it
cannot be said that trial counsel failed to uncover and present
significant mitigating evidence at sentencing, such that his
conduct constituted ineffective assistance of counsel. *See*
*Williams*, 529 U.S. at 396. Given the information that trial
counsel presented to the trial court and knew had been included
in sentencing submissions to the trial court, the court cannot
find that trial counsel's inability to obtain the Osborne
Society report satisfies the *Strickland* standard for ineffective
assistance of counsel. *See, e.g.*, *Perez v. Greiner*, No. 01-CV-
5522 (AKH), 2002 WL 31132872, at *8 (S.D.N.Y. Sept. 25, 2002)

(denying ineffective assistance of counsel claim where trial counsel stated defendant should receive maximum sentence if he committed the murders and presented no mitigating evidence); *see also Bethea v. Walsh*, No. 09-CV-5037 (NGG), 2016 WL 258639, at *25 (E.D.N.Y. Jan. 19, 2016) (denying ineffective assistance of counsel claim where trial counsel did not present all mitigating evidence he could have presented); *Carlisle v. Herbert*, No. 01-CV-11392 (SAS), 2002 WL 1822735, at *4 (S.D.N.Y. Aug. 8, 2002) (denying ineffective assistance claim where trial counsel failed to uncover various mitigating factors). Accordingly, petitioner has not demonstrated that trial counsel's failure to obtain the Osborne Society report "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. The state court's decision on this claim was not an unreasonable application of federal law and petitioner's fifth ineffective assistance of counsel claim is denied.

### 6. *Failure to Raise an Intoxication Defense and to Utilize Evidence Establishing the Seriousness of Petitioner's Drug Addiction*

Petitioner's sixth ineffective assistance of counsel claim is that trial counsel failed to raise an intoxication defense or utilize petitioner's drug addiction to promote his defense. Under New York law, "[a] charge on intoxication should be given if there is sufficient evidence of intoxication in the record for a reasonable person to entertain a doubt as to the

element of intent on that basis." *People v. Sirico*, 17 N.Y.3d 744, 746 (N.Y. 2011) (citing *People v. Perry*, 61 N.Y.2d 849, 850 (N.Y. 1984)). Courts in New York will not charge intoxication as a defense based only on conclusory claims or "bare assertion[s] by a defendant that he was intoxicated." *People v. Gaines*, 83 N.Y.2d 925, 927 (N.Y. 1994). New York courts have also denied a charge of intoxication when a court's evaluation of the evidence, taken in the light most favorable to the defendant, shows that the "defendant's overall course of conduct showed that he was behaving purposefully." *People v. Manning*, 1 A.D.3d 241, 242 (1st Dep't 2003). Numerous New York State cases have found that an intoxication charge is not warranted when the defendant does not offer specific testimony as to the effect of drugs or alcohol on his mental state. *McCray v. Conway*, No. 10-CV-5138 (RJS) (GWG), 2011 WL 291698, at *8 (S.D.N.Y. Jan. 31, 2011) (collecting New York State cases), *report and recommendation adopted*, No. 10-CV-5138 (RJS) (GWG), 2014 WL 5035215 (S.D.N.Y. Sept. 30, 2014).

Here, at a minimum, petitioner's claim fails under the second *Strickland* prong, prejudice, because he cannot prove that an intoxication charge would have been granted, let alone that granting one would have changed the outcome of the trial. In his written statement to police, petitioner claimed that he returned home at 10 AM on Saturday morning after a night of

smoking crack and that Gibbs "could tell [he] was high." (ECF
No. 6-1, Trial Tr. at 157.) This "bare assertion" is the only
evidence as to petitioner's intoxication at the time of the
murder, which is not sufficient to warrant an intoxication
charge under New York Law. *Gaines*, 83 N.Y.2d at 927.

Petitioner also fails under the first *Strickland* prong
of deficient performance. Based on New York law, testimony by
petitioner would have been required to obtain an intoxication
charge. Such testimony would have been incredibly risky for
petitioner because his inconsistent statements to police left
him vulnerable to damaging cross-examination. Thus, it was not
unreasonable for defense counsel to make the strategic decision
to not push petitioner to testify. *See Underwood v. Artuz*, No.
95-CV-7866 (SAS), 1996 WL 734898, at *4 (S.D.N.Y. Dec. 24, 1996)
(finding no ineffectiveness of counsel where trial counsel did
not call defendant to testify as to his own intoxication where
testifying might have subjected defendant to damaging cross-
examination); *see also Gssime v. Greiner*, No. 02-CV-04602 (JBW),
2003 WL 23185772, at *16 (E.D.N.Y. Oct. 29, 2003) (finding no
ineffectiveness of counsel for not pursuing intoxication charge
because defendant's required testimony would have been
"extremely risky"). Given defense counsel's decision not to
elicit testimony regarding intoxication at trial, petitioner has
not overcome the presumption under *Strickland*'s first prong that

counsel acted reasonably in not requesting an intoxication charge. *Strickland*, 466 U.S. at 689-90. Therefore, the court denies petitioner's sixth claim of ineffective assistance of counsel.

7. *Cumulative Effect of All Ineffective Assistance Claims*

Petitioner's seventh claim is that the cumulative effect of all of trial counsel's alleged errors denied him the right to effective assistance of counsel. Even if petitioner's trial counsel's actions resulted from error rather than strategy or reasons beyond his control, counsel's performance must still be accorded a degree of deference, as the Sixth Amendment does not guarantee "error-free, perfect representation," *Morris v. Garvin*, No. 98-CV-4661 (JG), 2000 WL 1692845, at *3 (E.D.N.Y. Oct. 10, 2000), but merely a "wide range of professionally competent assistance," *Strickland*, 466 U.S. at 689. Since this court has determined that none of petitioner's other ineffective assistance claims are meritorious, nor even appear to be errors of trial counsel, the state court's rejection of petitioner's ineffective assistance claims, individually and cumulatively, was not an unreasonable application of federal law. *See Wise v. Smith*, 735 F.2d 735, 739 (2d Cir. 1984) (defendant "was not entitled to a perfect defense, and the cumulative effect of the errors and omissions that we might find do not amount to a

denial of effective assistance of counsel"). Thus, petitioner's seventh ineffective assistance claim is denied.

### III. **Prosecutorial Misconduct**

The third ground for petitioner's habeas petition involves two claims of prosecutorial misconduct relating to: (1) the People's alleged use of perjured testimony by a police officer; and (2) the People's alleged fraud regarding petitioner's petit larceny arrest. (ECF No. 5-2, Attachment D to Supp. Pet. at 13-16.) The court is procedurally barred from hearing these claims on the merits because neither was raised in petitioner's first C.P.L. § 440.10 motion or his direct appeal. Although petitioner did raise the claims on subsequent appeals, the claims were procedurally barred from being heard on those appeals under C.P.L. § 440.10(2)(c) for not having been raised earlier. (*See* ECF No. 6-4, State Ct. R. of Second 440.10 Motion at 21-22; ECF No. 6-5, State Ct. R. of *Coram Nobis* Motion at 15-17.) Because petitioner's prosecutorial misconduct claims have "not been exhausted and the petitioner no longer has a state forum in which to raise the claim, the claim [is] deemed exhausted but procedurally barred from habeas review." *Desrosiers*, 2007 WL 2713354, at *3.

### CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is denied and dismissed. The court declines to

issue a Certificate of Appealability because petitioner has not shown that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Middleton v. Att'ys Gen. of States of N.Y., Pennsylvania*, 396 F.3d 207, 209 (2d Cir. 2005) (internal quotation marks omitted); *see also* 28 U.S.C. § 2253(c) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."). Additionally, the court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and therefore, *in forma pauperis* status is denied for purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962). The Clerk of Court is respectfully requested to enter judgment denying and dismissing the petition, serve a copy of this Memorandum and Order and the judgment on *pro se* petitioner, note service on the docket, and close the case.

**SO ORDERED.**

Dated:    August 7, 2018
          Brooklyn, New York

                                    /s/
                       _____
                       **HON. KIYO A. MATSUMOTO**
                       United States District Judge

56